THE PEOPLE *ex rel.* NICHOLAS G. BYRON, State's Attorney, Madison County, Plaintiff, *v.* THE BOARD OF TRUSTEES OF SOUTHERN ILLINOIS UNIVERSITY *et al.*, Defendants-Appellants.—(FACULTY ORGANIZATION FOR COLLECTIVE BARGAINING *et al.*, Intervening Plaintiff-Appellee.)

Fifth District    No. 79-648

Opinion filed November 10, 1980.

Feirich, Schoen, Mager, Green & Associates, of Carbondale, for appellants.

Hirsh & Schwartzman, of Chicago, for appellee.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

This is an interlocutory appeal brought pursuant to Supreme Court Rule 308 (Ill. Rev. Stat. 1979, ch. 110A, par. 308). The trial court found that an order permitting intervention as of right involved a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order might materially advance the ultimate disposition of the litigation. The question of law identified by the trial court is "the right of the petitioner, a labor organization, to intervene in this cause of action, 'as of right,' where the suit is for mandamus and declaratory relief in relation to the Illinois Open Meeting Law and is brought and prosecuted by a public officer, namely, the States [*sic*] Attorney of Madison County, Illinois, against another public agency, Southern Illinois University."

The People of the State of Illinois, upon the relation of the County of Madison, brought an action for declaratory judgment and for a writ of *mandamus* against the Board of Trustees of Southern Illinois University (hereinafter the Board) and each member thereof, both individually and in his or her official capacity. In a 14-count complaint filed on June 14, 1979, the People alleged that defendants had violated "An Act in relation to meetings" (Ill. Rev. Stat. 1977, ch. 102, par. 41 *et seq.*) (hereinafter the Act) with reference to the Board's decision of February 8, 1979, to change the governance structure of Southern Illinois University. By that decision the Board had changed the structure to a centralized one headed by a chancellor. Plaintiff asked the court to declare that certain discussions had by defendants with regard to the change, both during executive sessions closed to the public and during the course of informal conversations, were violations of the Act. Plaintiff asked the court also to issue a writ of *mandamus* requiring defendants to comply with the provisions of the Act in the future. In that regard plaintiff sought an order requiring all closed meetings of defendants or their successors in office to be recorded by an electronic device or a certified court reporter and the "recordings or notes" thereof to be kept safely and securely, subject to inspection by the Madison County State's Attorney's Office upon reasonable notice. Plaintiff also sought an order requiring defendants to

"* * * maintain individual logs of all conversations not in public meetings they have with other BOARD OF TRUSTEES members, either in person or by telephone, whenever said conversation involves business or topics pertinent to their duties as members of the BOARD OF TRUSTEES, said logs to show the date, time, place, topic, and names of the conversing parties and to be produced to the Madison County State's Attorney's Office upon reasonable notice."

On July 11, 1979, the Faculty Organization for Collective Bargaining (hereinafter "FOCB") petitioned to intervene pursuant to section 26.1 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 26.1). Defendants moved both for dismissal of the petition to intervene and for transfer of the cause to the circuit court of Jackson County. The latter motion was granted. Thereafter FOCB, together with certain members of the faculty of Southern Illinois University as individuals, filed an amended petition to intervene. The inclusion of the faculty members constituted the amendment to the petition. In the petition FOCB is described as "an unincorporated faculty association affiliated with the Illinois Education Association and * * * composed of 120 members employed by defendants at its [sic] Edwardsville campus in the capacity of instructor, associate professor, assistant professor and professor." The petitioners stated that they wished to intervene

"* * * in order that they may assert their rights in said action to wit: to insure that all meetings of the Defendant be held in compliance with the Act; that since many meetings of Defendants were in violation of the Act and resulted in the decision to change the system structure and governance of Southern Illinois University, said decision has the direct effect of eroding Petitioner FOCB's capacity to advise Defendants relative to its members' wages, hours and conditions of employment."

In support of defendants' motion to dismiss the petition to intervene, they filed an affidavit of James Brown, vice chancellor, formerly acting chancellor, of Southern Illinois University, in which he stated,

"[T]he faculty organization known as the Faculty Organization for Collective Bargaining on the Edwardsville Campus of Southern Illinois University is not now, and never has been [sic] recognized as a bargaining agent for faculty members. * * * [T]he aforesaid faculty organization is not now nor has it ever been recognized as an advisor to the administration of Southern Illinois University relative to wages, hours, and conditions of employment for faculty members at the Edwardsville Campus of Southern Illinois University."

In the petition to intervene the petitioners stated that they were making the same allegations that plaintiff had made in its complaint, that they relied on plaintiff's complaint for their own request to intervene and that they had "assisted Plaintiff in the preparation of the instant matter." They said that they "reaffirm[ed] the allegations of Plaintiff's Petition for Writ of Mandamus" and that "[i]n addition," if they were granted permission to intervene, they would "request that all action taken at the meetings and discussions referred to in said Petition be declared void." In an order filed December 12, 1979, the trial court permitted the intervention as of right

"since the representation of petitioners' interest by the plaintiffs may be inadequate and the petitioners may be bound by an order or judgment in this cause."

From that order defendants perfected this appeal, contending (1) FOCB lacks "sufficient special interest different from the interest of the public to intervene in this action as of right"; (2) FOCB "may not intervene as of right because it has not shown or stated how representation by the State's Attorney is or may be inadequate, and it has not shown how it may be bound by an order or judgment entered in the main action"; (3) if FOCB is permitted to intervene it would interject "issues not germane to the original action."

Intervenors argue to the contrary with respect to each of these issues. As to the last, they take the position that they do not raise issues "not germane to the main action," that they merely seek a "broader remedy." Be that as it may, by virtue of the fact that they do seek a "broader" remedy, they ask the court for essentially two forms of relief. They ask for the relief plaintiff seeks, which they label "prospective," namely, a declaration by the court that defendants' discussions were violations of the Act, together with a writ of *mandamus* requiring defendants' compliance with the provisions of the Act in the future. In addition they ask for relief not sought by plaintiff, which they label "retrospective," namely, a declaration by the court that the action of the Board was void. This further relief, they say, would "rectify the injury they have suffered as a result of violations of the Act by the Defendants." They describe in greater detail in their brief than they did in their petition to intervene the nature of that injury:

> "The decisions and actions taken in those meetings in violation of the Act, established a new governance structure at Southern Illinois University (S.I.U.), creating an additional chancellor level of authority between the President of the Edwardsville Campus and the Board of Trustees. This position acts to dilute the impact the President has on the final decision making authority of the University—the Board of Trustees. By adding an additional layer of authority between the President of the local campus and the Board of Trustees, the faculty and representatives of the faculty are further removed from that body which most directly affects their ability to negotiate salaries, working conditions and other terms of employment. Furthermore, the additional budget allocations necessitated by the new governance structure will indirectly affect the portion of the budget available for salaries and other benefits to faculty."

Elsewhere in their brief intervenors say,

> "Decisions altering the University's administrative body took place

outside of properly conducted public meetings at which Intervenors would have had the opportunity to express their viewpoints and provide input into the decision making process establishing a new governance system. Instead those decisions were made and carried out in secret. Such changes serve to erode Intervenors' ability to effectively act on their behalf regarding academic and economic concerns."

■■ That part of section 26.1 of the Civil Practice Act upon which intervenors rely provides as follows:

"Upon timely application anyone shall be permitted as of right to intervene in an action: * * * (b) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action * * *."

It is well established that one who petitions to intervene must have an enforceable or recognizable right and more than a general interest in the subject matter of the proceedings. (*Cooper v. Hinrichs* (1957), 10 Ill. 2d 269, 140 N.E.2d 293; *University Square, Ltd. v. City of Chicago* (1979), 73 Ill. App. 3d 872, 392 N.E.2d 136; *Gray v. Starkey* (1976), 41 Ill. App. 3d 555, 353 N.E.2d 703.) That is to say, an intervenor must show a specific, enforceable or recognizable right greater than the interest of the general public in the subject matter of the suit. *Caterpillar Tractor Co. v. Lenckos* (1979), 77 Ill. App. 3d 90, 395 N.E.2d 1167.

In their reply brief defendants quote from the case of *Board of Education v. County Board* (1978), 60 Ill. App. 3d 415, 376 N.E.2d 1054, and cite the slightly more recent one of *In re Organization of Byron Park District* (1978), 67 Ill. App. 3d 61, 385 N.E.2d 67, both of which consider available relief with respect to violations of the Open Meetings Act. In *County Board*, which involved a detachment and annexation petition, the school district from which certain territory was detached sought review by the circuit court, which affirmed the administrative decision. On appeal the school district claimed, among other things, that the "decisions of the [two] county boards [of school trustees] were invalid in that they allegedly violated the Open Meetings Act." The allegation arose from the fact that the two boards adjourned after taking evidence to deliberate in private whereupon they returned to the open forum to vote. Having objected to the appellant's reliance upon the case of *People ex rel. Hopf v. Barger* (1975), 30 Ill. App. 3d 525, 332 N.E.2d 649, for the reason that it was "a mandamus action to compel an open meeting and not an action to declare a public act invalid," the court said,

"We have carefully examined the provisions of the open meetings act and we note that it provides for the issuance of an [*sic*] mandamus to compel the meeting to be open. In addition, it provides

that violations of the act might result in misdemeanor, criminal penalties for intransigent office holders. However, nothing in the act or in case law mandates the invalidity of public action allegedly taken during closed proceedings. In the absence of clear precedent, and without legislative mandate, we will not construe the act in question as creating such a result."[1] 60 Ill. App. 3d 415, 421, 376 N.E.2d 1054, 1058.

In the later case of *Byron Park District*, which involved an effort to annex or incorporate the site of a nuclear power plant, the appellants claimed that an annexation petition was invalid because of failure to comply with the Open Meetings Act. The noncompliance arose out of the failure of a certain park district to publish or post a public notice of its regular meetings for the calendar and fiscal years in which the meeting in question occurred. Citing *County Board*, the court stated:

"[A]lthough the open meetings act provides for the issuance of a mandamus to compel meetings to be open and even provides criminal penalties, under some circumstances, for public office holders who refuse to comply with the act, nothing in the act or elsewhere, [*sic*] invalidates official actions taken at proceedings held in a manner violative of the open meetings act." 67 Ill. App. 3d 61, 66, 385 N.E.2d 67, 71.

■■ Relying upon *Byron* and *County Board*, defendants maintain that "no court can change the result of the meetings in question even if they violated the Open Meetings Act" because, they say, the terms of the Act do not extend so far. From that proposition they conclude that "the 'special concerns' of the intervenor [FOCB] do not constitute the inadequacy of representation required for intervention as of right." Although we do not understand how FOCB's special concerns could "constitute" adequacy or inadequacy of representation, we suppose that defendants mean by the statement that representation by the State's Attorney can not be inadequate if the relief intervenors seek is prohibited by law. We think, though, it is more to the point to say that because the relief sought by intervenors is prohibited by law, they can have no interest, no enforceable or recognizable right, with respect to that relief which could be

---

[1] Section 43 of the Act provides for writ of *mandamus* as follows:

"Where the provisions of this Act are not complied with or where there is probable cause to believe that the provisions of this Act will not be complied with, the court shall issue a writ of mandamus requiring that a meeting be open to the public at large or issue such other appropriate order as will insure compliance with the provisions of this Act." (Ill. Rev. Stat. 1977, ch. 102, par. 43).

Section 44 of the Act provides for a criminal penalty: "Any person violating any of the provisions of this Act shall be guilty of a Class C misdemeanor." Ill. Rev. Stat. 1977, ch. 102, par. 44.

prejudiced by any judgment or order in the action in which they have petitioned to intervene. Absent the interest required by section 26.1 of the Civil Practice Act, they may not intervene as of right, at least with respect to the additional relief sought by them though not by plaintiff. Therefore, if they are to be allowed to intervene at all, they must be allowed to do so only with respect to the other relief they seek.

Intervenors contend that representation by the State's Attorney would be inadequate not only as to the additional relief sought by them but also as to the relief sought both by them and by plaintiff. While it is possible that representation by the State's Attorney might be inadequate as to the further relief sought by intervenors, were it available as a remedy, it is difficult to perceive how intervenors can have any greater interest than that of the general public in a declaration by the court that defendants' discussions were violations of the Act or in a writ of *mandamus* requiring them to comply with it in the future. Nor is intervenors' argument in this regard persuasive. Absent a showing of any greater interest than that of the general public, representation by the State's Attorney is adequate as to the relief sought both by plaintiff and intervenors. Therefore, it is error to permit them to intervene as of right with respect to that relief as well.

In summary, we have concluded that intervenors have no enforceable right as to the additional relief they seek in the form of a declaratory judgment that the action of the Board was void. As to that remedy they can have no interest which can be bound by any order or judgment in the action and, necessarily, no need for any representation of any kind. As to the relief sought both by plaintiff and intervenors for a declaratory judgment that defendants' discussions were violations of the Act and for writ of *mandamus*, we have concluded that intervenors have no greater interest in the action than that of the general public. That interest can be adequately represented by the State's Attorney. Therefore, we hold that petitioners may not intervene as of right in this cause, and we reverse the order of the trial court permitting them to do so.

Reversed.

KARNS and SPOMER, JJ., concur.